**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ALLEN SOLOMON,

                              **Case Number 1:20-cv-05449-VEC**

        Plaintiff,

   -against-

CURT SZYMANSKI, and CAFFEINATION
TITLE, LLC, *a Wisconsin limited liability
company*,

        Defendants.
-------------------------------------------------------X

## AFFIDAVIT OF CURT SZYMANSKI

1. My name is Curt Szymanski. I am a resident of Waunakee, Wisconsin. I am over the age of 18 years, and I have personal knowledge of the facts and circumstances set forth in this Affidavit. I give this Affidavit is support of the Motion to Dismiss for Lack of Personal Jurisdiction filed in the above-captioned case.

2. I am the sole member of Caffeination Title, LLC ("Caffeination Title") a Wisconsin limited liability company, which was formed in November 2019, but did not start doing any business until 2020. Caffeination Title is in the business of real estate related services, including title insurance. We currently service several states, **not** including New York. We maintain no offices in New York, do no business in New York, and our website and sales efforts include no effort to make sales or take payment from New York (nor have we ever done so).Caffeination is a start-up that in June 2020 processed its first order. To date, Caffeination Title has only grossed $200.

3. Attached to this Affidavit as Exhibit "A" is a printout of the *LinkedIn* page for Plaintiff, Allen Solomon ("Solomon"). That page provides some of the information about Solomon that I personally know to be true; for example, Solomon has a law degree, is the CEO of Rebel Unicorn, LLC, and is the CEO of System2Thnking, LLC. Rebel Unicorn is an internet marketing company and digital advertising agency, which is run by Solomon. System2Thnking, LLC is a firm that provides consult services to the real estate industry (including many title and escrow companies). Solomon also authored a very well-regarded real estate transaction compliance manual. He is well known in the real estate services industry and is sophisticated. I am also aware that he was deeply involved with Linear Title AKA Solidifi, and that company was ultimately sold for many millions of dollars.

4. In October 2019, I was contemplating a new title services company, to be initially focused on Wisconsin and Illinois. I emailed Solomon, who I considered to be a close acquaintance or friend, to ask for a copy of the real estate compliance manual that he had authored. A copy of that email is attached to this Affidavit as Exhibit "B."

5. That email started a back and forth about my idea for Caffeination Title. In December 2019, before Caffeination Title was doing any business, I visited Solomon in New York City. We had dinner as long-time friends and discussed my idea to start a new business. At that time, there was no in-depth discussions or formal decisions made about Solomon joining my start up, and it was on open, exploratory discussion.

6. After returning to Wisconsin from New York, I formally asked Solomon if he would consider participating in the start-up, in exchange for equity in the company. We agreed that Solomon would become a special consultant in the new company and would receive 10% of the company in exchange. Solomon was always *extremely* careful about the way he characterized his involvement in Caffeination Title, because he did not want to create an appearance of any conflict of interest with the various other title, escrow, and real estate service companies to which he was also providing consulting services.

7. In early 2020, Solomon traveled to Wisconsin and stayed in my home. He participated in meetings where we discussed company business. After his trip to Wisconsin and our agreement on equity, he took the lead in developing the company website (in collaboration with me , using a DIVI web site created by Caffeination Title as a starting point, and using guidance including but not limited to a site map, rotating images on home page, and text/copy written by myself and Caffeination Title), but I paid the web developers directly for their work on the site. He also introduced me to various third-party vendors including KnowledgeSplice, NotaryGo, BC Law, and Punctual Abstract.

8. In April 2020, Solomon sent an email asking me to prepare a term sheet, memorializing the equity he would get in Caffeination Title in exchange for his participation. That email is attached hereto as Exhibit "C." I thought that request was fair. I reiterated that his equity would be divided into four tranches of 2.5% each, and I reiterated our prior discussions, and that it was always our understanding that salaries would start after the company went live, and would ramp up to a reasonable Madison, Wisconsin salary level as the company grew. Exhibit "C." Solomon responded that he agreed. Exhibit "C." In fact, Solomon himself had stated that my assistant would be the only salary for the first four months of start-up operations. See the email of February 2, 2020, attached to this Affidavit as Exhibit "D." During this entire time period, Solomon continued running his other businesses, for example, in the email attached as Exhibit "C," we discussed his ongoing effort to secure PPP funding.

9. On June 9, 2020, I sent Solomon an email attaching various documents prepared by our corporate counsel in Wisconsin, including an NDA, consulting agreement, and agreement setting terms for the transfer of company equity. That email chain is attached

to this Affidavit as Exhibit "E." He promised to read the documents and thanked me for having them drafted. Exhibit "E." I reiterated that the plan was for Solomon to come work in Wisconsin, to which he replied "sounds good, thanks." Exhibit "E."

10. On June 21, 2020, I received an email from Solomon that sounded bitter and angry. A copy of that email chain is attached as Exhibit "F." He demanded payment for the benefits that he conferred on Caffeination Title and attached a memorandum that was supposedly drafted for him by legal counsel. A copy of that memorandum is attached as Exhibit "G." The memorandum took the position that he was entitled to 31% of the company, or to payment of $155,000, for his contributions.

11. I called him to discuss what was happening and to try to work through his issues in a reasonable fashion. After the call he sent me a second email (which is a part of the email chain attached as Exhibit "F"), which attached my personal financial statement, and stated that unless the statement is not accurate, coming to a "reasonable agreement" should be possible. In other words, in his opinion, I have enough money to pay what he demands.[1]

12. On June 22, 2020, I received an invoice from Solomon's company, The Rebel Unicorn, in the amount of $15,000.00, for website development services. That invoice is attached as Exhibit "H." This was particularly unexpected and flabbergasting, since it was supposedly for website development services, and I had already paid the website development people directly. I also received email from Solomon's personal assistant at System2Thinking, attaching another invoice for $140,000.00, this time for "consulting services." That email and invoice is attached as Exhibit "I."

13. The next day, June 23, 2020, Solomon sent me an email threatening to sue me in New York, in federal court, and that by the time he wins, my legal fees would be more than what he is seeking now, and that I should "seriously consider that." See the June 23 email chain attached as Exhibit "J." I responded by trying to speak reasonably about the situation and his concerns. Exhibit "J." Solomon replied by threatening to seek triple any amount owed to him and advising me that he will get a judgment against me very quickly in New York federal court and will execute on it quickly. Exhibit "J."

14. On the evening of June 23, 2020, our website – hosted by Solomon's company – was taken offline. This was done even though we had paid the web developers for the site. This was particularly damaging to the business, since we were just starting to see business generation, we were beginning marketing and sales efforts, and we were in the process of advertising for, evaluating, interviewing and hiring new employees. Solomon also removed my access to Basecamp, a software program that we use to project manage our tasks, and keep the company organized. It is my belief that through these actions, Solomon caused significant damage to Caffeination Title, for which the

---

[1] I did not attach a copy of my personal financial statement due to privacy concerns relative to filing such a document publicly. I will certainly provide the document directly to the Court, if it is requested.

company intends to pursue him legally if appropriate. We are currently evaluating our legal claims with our litigation counsel.

FURTHER AFFIANT SAYETH NAUGHT.

STATE OF WISCONSIN )
                              ) ss
COUNTY OF DANE )

CURT SZYMANSKI
PRINT FULL NAME

SIGNATURE

Sworn to and subscribed before me this 28 day of August 2020.

Mary C Lavine
Notary Public
Exp. 3/3/22

Notary Seal



4