**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ALLEN SOLOMON,

                                       **Case Number 1:20-cv-05449-VEC**

                 Plaintiff,

       -against-

CURT SZYMANSKI, and CAFFEINATION
TITLE, LLC, *a Wisconsin limited liability
company*,

                 Defendants.
-------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

      Defendants, CURT SZYMANSKI ("Szymanski"), and CAFFEINATION TITLE, LLC,

("Caffeination Title"), a Wisconsin limited liability company, by and through the undersigned

counsel, hereby move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2). This

Court lacks personal jurisdiction over the Defendants, who are Wisconsin residents, having no

connection to New York. Defendants respectfully request that this matter be dismissed, as follows:

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS…………………………………………………........................i

TABLE OF AUTHORITIES…………………………………………………....................ii-iv

MEMORANDUM OF LAW.…………………..………………………………………….1

INTRODUCTION…………….…..…………………………………………………………2

FACTS…………………….………..…..………………………………………………3

ARGUMENT………………………………………………………………………..9

I.      Legal Standard…………………………………………………........................9

II.     Defendant is not Subject to Personal Jurisdiction in this District under New York State Law …………………………….……………………………………………...10

A.      New York's Long-Arm Statute Does Not Provide Jurisdiction Over Defendant………..10

B.      The Exercise of Personal Jurisdiction Over Defendant Would Violate Due Process…….13

CONCLUSION………………………………………………………....…………….....15

# <u>TABLE OF AUTHORITIES</u>

*7 West 57th Street Realty Co., LLC v. Citigroup, Inc.,*
  2015 U.S. Dist. LEXIS 44031, 2015 WL 1514539, at *10 (S.D.N.Y. 2015)..............12, 15

*Agency Rent A Car Sys., v. Grand Rent A Car Corp.,*
  98 F.3d 25, 29 (2d. Cir. 1996)....................................................................... 12

*Am. Lecithin Co., v. Rebmann,*
  2017 U.S. Dist. LEXIS 162037, at *13 (S.D.N.Y. Sep. 30, 2017) ..................................... 9

*Aquiline Capital Partners LLC v. Finarch LLC,*
  861 F. Supp. 2d 378, 2012 U.S. Dist. LEXIS 69410 (S.D.N.Y. 2012) ........................... 11

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
  171 F.3d 779, 784 (2d Cir. 1999)................................................................... 9

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
  305 F.3d at 127 (2nd Cir. 2002)................................................................... 13

*Beacon Enterprises, Inc. v. Menzies,*
  715 F.2d 757, 766 (2d Cir. 1983)................................................................. 13

*Best Van Lines, Inc., v. Walker,*
  490 F.3d 239, 246 (2d Cir. 2007)................................................................. 11

*Capitol Records, LLC v. VideoEgg, Inc.,*
  611 F.Supp. 2d 349, 364 (S.D.N.Y. 2009)....................................................... 14

*Cont'l Indus. Grp. v. Equate Petrochemical Co.,*
  586 F. App'x 768, 770 (2d Cir. 2014) ........................................................... 12

*DiStefano v. Carozzi N. Am., Inc.,*
  286 F.3d 81, 84 (2d Cir. 2001).................................................................... 9

*Eades v. Kennedy, PC Law Offices,*
  799 F.3d 161, 169 (2d Cir. 2015)................................................................. 14

*Hutton v. Priddy's Auction Galleries,*
  275 F. Supp. 2d 428, 439 (S.D.N.Y 2003) ...................................................... 11

*In re Magnetic Audiotape Antitrust Litig.,*
  334 F.3d 204, 206 (2d Cir. 2003)................................................................. 9

*Int'l Diamond Imps., Inc. v. Oriental Gemco Ny, Inc.,*
  64 F.Supp. 3d 494, 505 (S.D.N.Y. 2014)......................................................... 9

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310, 316 [1945]............................................................................................. 14

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC,*
  2017 U.S. Dist. LEXIS 29806 at 44 (S.D.N.Y. 2017) ...................................................... 14

*JFP Touring, LLC v. Polk Theatre, Inc.,*
  2007 U.S. Dist. LEXIS 51388, 2007 WL 2040585, at *11 (S.D.N.Y. 2007)................... 13

*Karoon v. Credit Suisse Grp. AG,*
  2016 U.S. Dist. LEXIS 24480, 11 (S.D.N.Y. 2016).................................................. 12, 15

*Licci v. Lebanese Canadian Bank, SAL,*
  673 F.3d 50, 60-61 (2d Cir. 2012) ................................................................................... 10

*Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc.,*
  80 F.R.D. 494, 498 (S.D.N.Y. 1978) ................................................................................ 12

*M. Shanken Communs., Inc., v. Cigar500.com,*
  2008 U.S. Dist. LEXIS 51997, at *8 (S.D.N.Y. July 7, 2008) ........................................... 9

*MacDermid, Inc. v. Deiter,*
  702 F.3d 725, 730 (2d Cir. 2012)...................................................................................... 14

*Maranga v. Vira,*
  386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005)....................................................................... 13

*McKee Elec. Co. v. Rauland-Borg. Corp.,*
  20 N.Y.2d 377, 383, 229 N.E.2d 604 (1967)..................................................................... 11

*Megna v. Biocomp Labs, Inc.,*
  166 F. Supp. 3d 493, 496 (S.D.N.Y. 2016)......................................................................... 9

*Overseas Media, Inc., v. Skvortsov,*
  407 F. Supp. 2d 563, 571 (S.D.N.Y. 2006)....................................................................... 10

*Professional Personnel Mgmt. Corp. v. Southwest Medical Assocs.,*
  216 A.D.2d 958 (1995) ...................................................................................................... 12

*Sheldon Estates v. Perkins Pancake House,*
  48 AD2d 936, 937 ............................................................................................................. 12

*Thackurdeen v. Duke Univ.,*
  660 F. App'x 43, 45-46 (2d Cir. 2016) .............................................................................. 11

*Tow Services Intern, Inc. v. St. Paul Fire and Marine Ins. Co.,*
 779 F. Supp. 2d 319, 322 (E.D.N.Y. 2011) ........................................................................ 9

*V Cars, LLC v. Isr. Corp.,*
 902 F. Supp. 2d 349 (S.D.N.Y. 2012) .............................................................................. 11

*Walden v. Fiore,*
 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) .............................................................. 15

*World-Wide Volkswagen Corp. v. Woodson,*
 444 U.S. 286, 291 (1980)................................................................................................... 13

**Statutes & Other Authorities:**

CPLR § 302(a)(1) ...................................................................................................................... 13

## <u>INTRODUCTION</u>

This case was brought against a Wisconsin entity, wholly owned by a Wisconsin resident, having no connection or relationship to New York or this District, for no reason other than (a) the convenience of Plaintiff (who lives here), and/or (b) to force Defendants into expensive litigation in the District, as leverage for demanding payment from them (a fact clearly established by emails from Plaintiff, as set forth in detail below).

The parties to this case agreed – and the writings show – that Plaintiff (through his various companies) provided consulting services to a Wisconsin start-up (Caffeination Title), in exchange for equity in the company, and his hope for future employment with the company (after "go live" and once it became profitable) in Madison, Wisconsin.

Then, in June 2020, Plaintiff did an about-face, taking the position that he was entitled to more equity for his contribution to the start-up, or in the alternative, to outrageous payments. Plaintiff began to demand these payments, invoicing Defendants, threatening litigation in New York federal court (where, according to Plaintiff, the legal fees alone would eclipse the amounts demanded), and sabotaging the company (by closing out web access to a project management system (BaseCamp), and taking down and password-protecting its website, www.caffeinationtitle.com). Plaintiff even emailed the individual Defendant a copy of his own personal financial statement (which Plaintiff had obtained in furtherance of company business as part of a title insurance underwriter application process), along with the message that unless the financial statement is wrong, it will be a "simple matter" to resolve the dispute. Unable to procure the money that he was demanding, Plaintiff filed this lawsuit, including frivolous employment claims under the FLSA, NYLL, and NYC Charter.

2

As demonstrated below, Defendants are doing no business in New York of any kind. The only connection to New York is that Plaintiff happens to live here and does national consulting work from his New York home. But Plaintiff's unilateral activities (or choice of residence) are not a basis to impose personal jurisdiction on foreign defendants who have no connection to this state. Nor are calls, emails, or Zoom meetings that Plaintiff took while he was at his New York home (absent some modicum of connection between Defendants' business activities and this forum). This Court has no personal jurisdiction over Defendants, and Defendants respectfully request that this matter be dismissed on that basis.

## FACTS

Plaintiff, Allen Solomon ("Solomon"), is a resident of New York, New York. *See Plaintiff's Complaint, D.E. 3, ¶8.* Caffeination Title is a Wisconsin limited liability company. *D.E. 3, ¶11; see also, Affidavit of Curt Szymanski, filed in support hereof, at D.E. 18.* Szymanski is the sole member of Caffeination Title and resides in a Wisconsin. *D.E. 3, ¶12; D.E. 18, ¶1, 2.* Caffeination Title is a start-up and opened for business in 2020 and obtained its first customer order in June 2020. *D.E. 18, ¶2.* Caffeination Title provides title insurance and real estate services in several states, **not** including New York. *D.E. 18, ¶2.* To date, the company has grossed approximately $200. *D.E. 18, ¶2.*

Solomon holds a Juris Doctor from Tulane University, and he has been the CEO of Rebel Unicorn, LLC, since 2014; according to Solomon's own LinkedIn page, "Rebel Unicorn represents some of the world's largest organizations" and is "a world class digital agency in New York City which specializes in cutting edge website and mobile application design, ecommerce design, demand generation, conversation rate optimization, and new business acquisition." *See LinkedIn profile for Allen Solomon, D.E. 18 at Exhibit "A."* Solomon is also CEO of another company,

System2Thnking, LLC, and has held that position since January 2012. *Id.* That company "is the nation's only management consulting firm devoted specifically to the real estate service industry." *Id.* Solomon authored "The Ultimate Real Estate Transaction Compliance Manual" and the "Title Insurance Licensing Manual." *Id.* Solomon was the co-founder of Linear Title AKA Solidifi, and his involvement lead to its $95 Million acquisition. *Id.* He is a well-known consultant on title insurance and related matters. *Id.; see also, D.E. 18, ¶3.* It is undisputed that Solomon is a very highly sophisticated individual. *D.E. 18, ¶3.*

In late 2019, Defendant, Curt Szymanski ("Szymanski") was contemplating a new title insurance company in Madison, Wisconsin, to initially service Wisconsin and Illinois (with expansion and growth contemplated in additional states), to be called Caffeination Title. *D.E. 18, ¶4,5.* Szymanski reached out to Solomon – who he considered a friend – to ask for a copy of Solomon's real estate title compliance manual. *Szymanski Affidavit ¶4, and emails attached thereto as Exhibit "B."* The two began to communicate regularly about Szymanski's idea to start a new title insurance company; in early December 2019 – prior to the launch of any company activity – Szymanski visited his friend in New York, where they had dinner and discussed Szymanski's idea to start a new company. *Szymanski Affidavit, ¶5.* At that time, Caffeination Title had not started to operate, and there were no in-depth discussions or formal decisions about Solomon being involved in the would-be company. *Szymanski Affidavit, ¶5.* When he returned to Wisconsin, Szymanski called Solomon, and asked if Solomon would consider formalizing his participation in the start-up, in exchange for equity in the company. *Szymanski Affidavit, ¶6.*

The parties agreed that Solomon would become a special consultant to Caffeination Title, in exchange for ownership equity in the company. *Szymanski Affidavit, ¶6.* A memorandum sent by Solomon memorializing his version of events (the "Solomon Memorandum") states that

Szymanski offered Solomon 10% equity in the company, which would vest over a three-year period. *D.E. 18 at Exhibit "G."* Solomon traveled to Madison, Wisconsin, staying at Szymanski's home and participating, for the first time, in company meetings. *D.E. 18, ¶7.*

Solomon thereafter took the lead on building the company website, with Caffeination Title paying all web development costs directly. *D.E. 18, ¶7.* Solomon introduced Szymanski to various third-party vendors, and otherwise provided advice and consultancy. *D.E. 18, ¶7.* During this time period, Solomon continued to run his other companies. *D.E. 18, ¶8 and at Exhibit "C"* (discussing Solomon's application for PPP funding in March 2020).

On April 29, 2020, Solomon wrote an email to Szymanski, asking for a term sheet, memorializing the agreement on equity and a proposed salary; he wrote, "I think after six months of contributions, it's time to focus on this." *D.E. 18 at Exhibit "C."* Szymanski responded that (a) he needs to work out the details of the 4 (2.5%) stages/conditions for 10% equity going to Solomon; (b) salaries will start only after company revenues have reached a certain level, eventually ramping up to a reasonable amount for Madison, Wisconsin. *Id.* Solomon responded: ***"I agree with everything you said."*** *Id.*[1]

On June 9, 2020, Szymanski emailed Solomon several documents to review, prepared by counsel, including an NDA, consulting agreement, and agreement setting terms for the transfer of company equity. *D.E. 18 at Exhibit "E."* Szymanski invited Solomon to discuss any concerns he may have about the documents, or any modifications that might be needed. *Id.* Solomon indicated his appreciation for the documents, and that he would give them a "deep read" over the weekend. *Id.* Szymanski reiterated that the plan was for Solomon to come work in Wisconsin, writing "[w]e need to get you here to Madison ASAP," to which Solomon replied "sounds good, thanks." *Id.*

---

[1] In an email on February 2, 2020, Solomon himself wrote that Becky Allen (Szymanski's assistant) would be the only salary for the first four month of company operations. *D.E. 18 at Exhibit "D."*

Solomon next emailed on June 21, 2020. *D.E. 18 at Exhibit "F."* The tone and content of that email was completely changed; it was hostile and angry. *Id.* Solomon complained that the terms of the agreements were not satisfactory. *Id.* He claimed, for the first time, to have devoted his time to Caffeination Title "on the promise that [he] would be moving to Madison [Wisconsin] and gainfully employed," and that instead he had been sent "a lump of coal." *Id.* Solomon demanded compensation for "the benefits" that Caffeination Title had received and indicated that the company cannot function without him. *Id.* He attached the Solomon Memorandum, which, according to Solomon, was "very self-explanatory." *Id.* It is unclear who wrote the Solomon Memorandum (Solomon claimed on a telephone call to Szymanski that is was his "legal counsel") which refers to Solomon as "the Client" and which purports to analyze the facts and legal positions of the parties, but in any event, the document was provided by Solomon to Szymanski in furtherance of Solomon's arguments. *Id; D.E. 18 at ¶10.*

The Solomon Memorandum begins by extolling the virtues of Solomon himself, including his current position as CEO of two successful corporations, his past positions as an officer of successful corporations, and his general sophistication, skill, experience, and acumen in various fields of business, and as an author. *D.E. 18 at Exhibit "G," Pg. 1.* It analyzes the agreements sent to Solomon, and unilaterally values his contributions to Caffeination Title at $155,000.00, which the Solomon Memorandum deems fair, since Solomon is "a thought leader in the industry." *D.E. 18 at Exhibit "G," Pg. 1, Pg. 5.* It further states that a fair value for Caffeination Title is $500,000.00, and that Solomon's contribution thus entitles him to 31% of the company. *Id.* It concludes by recommending Solomon (a) seek shares of the company commensurate with his contribution (31%); or (b) send Szymanski an invoice for services to the company and demand payment under either quantum meruit or unjust enrichment theories. *Id.*

Szymanski immediately called Solomon to discuss this email. *Szymanski Affidavit, ¶11.* After the call, Solomon emailed Szymanski, stated that he (Solomon) will not be moving forward with Caffeination Title, and attached a copy of Szymanski's own personal financial statement. *D.E. 18 ¶11 and Exhibit "F."* Solomon wrote: "unless [the financial statement] is inaccurate for some reason, coming to a reasonable agreement should be a simple matter." *Id.*

On June 22, 2020, Szymanski received an invoice from Solomon's company, The Rebel Unicorn, in the amount of $15,000.00, for website development services; the invoice was addressed to Szymanski in Wisconsin. *D.E. 18 at Exhibit "H."* This is notwithstanding that Caffeination Title had paid web developers directly for their work. Also on June 22, 2020, Szymanski received an email from Todd Ellison at System2Thinking (Solomon's other company), whose signature block identifies him as Solomon's executive assistant, attaching an invoice addressed to Szymanski in Wisconsin, in the amount of $140,000.00, for "consulting work." *D.E. 18 at Exhibit "I."*

One day later, on June 23, 2020, Solomon emailed Szymanski, advising that he had not yet retained counsel, but if he does not hear back, he will assume that Szymanski prefers litigation, and that "[t]he suit will be filed in New York as jurisdiction is established here for many reasons. By the time the litigation is over and I prevail (which I will), the attorney fees for you will be more than what you owe me so I would seriously consider that." *D.E. 18 at Exhibit "J."* Szymanski replied, confused about the change in Solomon's tone, reiterating prior understands, and attempting to work through the issues reasonably. *Id.* Solomon responded by demanding a monetary offer, or otherwise threatening he would sue Szymanski in "NYC Federal Court" and seek attorney's fees and treble damages ("3x the amount recovered"); according to Solomon, if no acceptable money amount is offered:

> You will need to retain counsel in NYC. Federal Court in NYC is known as the "rocket docket" as it moves rapidly so we plan to obtain a judgment and execute on it rapidly. I have retained and paid attorneys who are Super Lawyers and we will be moving forward shortly. Litigation is expensive, time consuming and a distraction. I suggest you come to terms with where we are and act accordingly however noting that as soon as the litigation is filed, my offer to settle is hereby withdrawn.

*Id.*

That night (the evening of June 23, 2020), Caffeination Title's website, which was hosted by Solomon's company, was taken offline, even though Caffeination Title had paid the web developer directly for its creation. *D.E. 18 at ¶14.* Solomon also removed Szymanski's access to *Basecamp*, a web-based project management computer program used to track the Caffeination Title tasks and work. *Id. at ¶14.* On July 15, 2020, Solomon filed this lawsuit against Szymanski and Caffeination Title. *D.E. 3.* Instead of simply suing in Wisconsin for the value of consulting and other services that were provided to a Wisconsin start-up that does no business in New York (which would have been a highly disputed claim, but at least would not have been an abuse of legal process), Solomon instead sued in this District, including a nonsensical panoply of inapplicable labor laws, including the FLSA, NYLL, and the New York City Charter.

None of these laws apply to the business-deal-gone-sour in this case, and the effort to misapply wildly inapplicable labor laws – in order to continue to pressure Szymanski into making monetary payments to a former business associate – is a misuse of litigation. But in any event, this Court need not reach those merits, because Defendants have no connection to this District, do no business in this District, and are not subject to personal jurisdiction in this District. As such, Defendants respectfully request that this case be dismissed for lack of personal jurisdiction.

## ARGUMENT

### I.    LEGAL STANDARD

A defense based on lack of personal jurisdiction may be asserted by motion made before a responsive pleading. Fed. R. Civ. P. 12(b)(2). In passing upon such a motion, the Court can consider evidence outside the pleadings. *See, e.g., Tow Services Intern., Inc. v. St. Paul Fire and Marine Ins. Co.,* 779 F. Supp. 2d 319, 322 (E.D.N.Y. 2011) (holding that a court may consider evidence outside of the pleadings in resolving a Rule 12(b)(2) motion). "Upon such motion, the plaintiff 'bears the burden of showing that the court has jurisdiction over the defendant.' *In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir.2003) (per curiam); *accord DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir.2001); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999)." *Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 496 (S.D.N.Y. 2016). "Although pleadings and affidavits are construed in the light most favorable to the plaintiff, 'conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction.'" *Am. Lecithin Co. v. Rebmann*, 2017 U.S. Dist. LEXIS 162037, at *13 (S.D.N.Y. Sep. 30, 2017); *see also Int'l Diamond Imps., Inc. v. Oriental Gemco Ny, Inc.*, 64 F. Supp. 3d 494, 505 (S.D.N.Y. 2014).

In determining whether personal jurisdiction exists, first, district courts must determine if there is statutory jurisdiction, and second, "[i]f there is a statutory basis for jurisdiction, the court must then determine whether . . . extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." *Rebmann*, 2017 U.S. Dist. LEXIS 162037, at *15 (internal citations omitted); *see also M. Shanken Communs., Inc. v. Cigar500.com*, 2008 U.S. Dist. LEXIS 51997, at *8 (S.D.N.Y. July 7, 2008).

## II.     DEFENDANT IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS DISTRICT UNDER NEW YORK STATE LAW

### A.     New York's Long-Arm Statute Does Not Provide Jurisdiction Over Defendant

As a prefatory matter, Plaintiff's Complaint fails to allege any basis for personal jurisdiction over Defendants in this case; indeed, the Complaint's subsection entitled "Jurisdiction and Venue" addresses only subject matter jurisdiction but is silent on personal jurisdiction. *D.E. 3, Pg. 2*. Moreover, the Complaint is clear that both Szymanski and Caffeination Title are domiciled in Wisconsin. *D.E. 1, ¶¶11, 12.*  N.Y. C.P.L.R. § 302 allows a court to exercise jurisdiction over a non-domiciliary if the specific cause of action alleged arises out of defendant's contacts with New York. *See Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 571 (S.D.N.Y. 2006).  "The New York long-arm statute does not extend . . . to the constitutional limits." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60-61 (2d Cir. 2012).  If a plaintiff cannot show that the long-arm statute extends to defendant, then a court need not engage in a constitutional analysis.

With respect to a defendant's New York contacts, for jurisdictional purposes, C.P.L.R. §302(a) allows this court to exercise personal jurisdiction over a non-domiciliary who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue

> from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

> 4. owns, uses or possesses any real property situated within the state.

"In applying the long-arm statute, 'New York courts have cautioned ... that defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial business activities.'" *V Cars, LLC v. Isr. Corp.*, 902 F. Supp. 2d 349 (S.D.N.Y. 2012) *quoting Aquiline Capital Partners LLC v. Finarch LLC*, 861 F. Supp. 2d 378, 2012 U.S. Dist. LEXIS 69410 (S.D.N.Y. 2012) (*quoting Hutton v. Priddy's Auction Galleries*, 275 F. Supp. 2d 428, 439 (S.D.N.Y. 2003)(*citing McKee Elec. Co. v. Rauland—Borg Corp.*, 20 N.Y.2d 377, 383, 229 N.E.2d 604 (1967)). "To establish personal jurisdiction under CPLR § 302(a)(1), as Plaintiff here seeks to do,[2] a plaintiff must show (1) that the defendant 'transacted business within the state' *and* (2) that the asserted claim 'arise[s] from that business activity.'" *Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 45-46 (2d Cir. 2016) (emphasis added). In assessing whether a defendant has "transacted business," in this District, courts look to "the totality of the defendant's activities within the forum." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks omitted). "New York courts define transacting business as purposeful activity – some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 F. App'x 768, 770 (2d Cir. 2014). "Purposeful activities are volitional acts by which a defendant avails itself of the privilege of conducting activities within the forum state,

---

[2] Plaintiff has not pleaded any torts or that Defendant owns any real property in New York.

11

thus invoking the benefits and protections of its laws." *Karoon v. Credit Suisse Grp. AG*, 2016 U.S. Dist. LEXIS 24480, 11 (S.D.N.Y. 2016) (internal quotations omitted).

"In determining whether an out-of-state defendant has transacted business in New York within the meaning of CPLR § 302(a)(1), the Second Circuit has considered, *inter alia*, "'whether the defendant has an on-going contractual relationship with a New York corporation, . . . [and] whether the contract was negotiated or executed in New York, and whether after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship. . . .'" *Id. citing Aquiline Capital Partners LLC*, 2012 U.S. Dist. LEXIS 69410 (*quoting Agency Rent A Car Sys. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted)).

Neither Plaintiff's own in-state activities nor Defendant's phone calls or emails to Plaintiff while he was in New York, are enough to create personal jurisdiction. As to the former, "plaintiff cannot, by virtue of its own acts in New York, bootstrap jurisdiction by imputing those acts to defendant." *Loria & Weinhaus, Inc. v. H. R. Kaminsky & Sons, Inc*., 80 F.R.D. 494,498 (S.D.N.Y. 1978). "Since [plaintiff's] cause of action did not arise out of defendant's activities within the State, jurisdiction may not be predicated upon any of the provisions found in CPLR 302." *Professional Personnel Mgmt. Corp. v. Southwest Medical Assocs*., 216 A.D.2d 958 (1995) *quoting Sheldon Estates v Perkins Pancake House*, 48 AD2d 936, 937); *see also, 7 West 57th Street Realty Co., LLC v. Citigroup, Inc*., 2015 U.S. Dist. LEXIS 44031, 2015 WL 1514539, at *10 (S.D.N.Y. 2015)("Foreign Banks' suit-related conduct must tie them to New York itself, not just to a plaintiff who happens to reside in New York").

Further, "electronic communications, telephone calls, faxes or letters, in and of themselves, are generally not enough to establish jurisdiction." *JFP Touring, LLC v. Polk Theatre, Inc*., 2007

U.S. Dist. LEXIS 51388, 2007 WL 2040585, at * 11 (S.D.N.Y. 2007). "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983); *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) ("[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself").

Here, it is completely undisputed that the Defendants are in Wisconsin and provide no services in New York. It is undisputed that the only in-person contact between the parties in New York took place before Caffeination Title was actively doing business, and before Solomon was even asked to formally participate in the company. The only other in-person meeting took place in Wisconsin. Other than that, all contact with Solomon was by telephone, email, and Zoom – and all of it centered on building a business in Wisconsin, which, once established, would support Solomon's move to Madison, Wisconsin. As such, CPLR § 302(a)(1) has not been satisfied.

**B.      The Exercise of Personal Jurisdiction Over Defendant Would Violate Due Process**

Only after establishing long arm jurisdiction may a court consider whether the exercise of personal jurisdiction satisfies due process considerations. To determine whether due process has been satisfied, courts analyze both "minimum contacts" with the state and "reasonableness" of subjecting the defendant to jurisdiction in the state. *Bank Brussels Lambert vs. Fiddler Gonzalez & Rodriguez*, 305 F.3d at 127 (2nd Cir. 2002). A "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  "The contracts must be such that 'maintenance of the suit does not offend traditional notions of fair

13

place and substantial justice.'" *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012)

(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 [1945]).

"'[M]inimum contacts exist where the defendant purposefully availed itself of the privilege

of doing business in the forum and could foresee being hauled into court there.'" *Capitol Records,*

*LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 364 (S.D.N.Y 2009)(quoting *Bank Brussels*, 305 F.3d

at 127).  Here, there is no basis to conclude that Defendant should have expected to get hauled into

court in New York, when it does no business relating, in any way, to New York. "As to the

minimum contacts requirement, a court must 'evaluate the quality and nature of the defendant's

contacts with the forum state under a totality of the circumstances test.'" *Joint Stock Co. Channel*

*One Russ. Worldwide v. Infomir LLC*, 2017 U.S. Dist. LEXIS 29806 at 44 (S.D.N.Y. 2017).  "The

minimum contacts analysis 'overlaps significantly' with New York's § 302(a)(1) inquiry into

whether a defendant transacted business in the State.'" *Id.* at 45. Plaintiff has not, and cannot

possibly, demonstrate the requisite "minimum contacts," merely based on Plaintiff's own in-state

activities, or the fact that Defendants had to call Plaintiff in New York to speak to him.

If a plaintiff has established minimum contacts (which Plaintiff here has not), "the

defendant has to 'present a compelling case that the presence of some other considerations would

render jurisdiction unreasonable.'" *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 169 (2d Cir.

2015) (internal citations omitted). Courts consider the following to determine reasonableness:

> (1) the burden that the exercise of jurisdiction will impose on the
> defendant; (2) the interests of the forum state in adjudicating the
> case; (3) the plaintiff's interest in obtaining convenient and effective
> relief; (4) the interstate judicial system's interest in obtaining the
> most efficient resolution of the controversy; and (5) the shared
> interest of the states in furthering substantive social policies.

*Id*.

Here, Plaintiff clearly understands the undue burden that New York litigation would impose on these Defendants (who have no connection to New York) because he attempted to leverage that knowledge while demanding payment, specifically threatening to file this case in this specific District; to wit, to file a lawsuit in "NYC federal court" and threatening that "[y]ou will need to retain counsel in NYC" and that the legal fees would quickly eclipse amounts demanded. Plaintiff thus specifically acknowledges (and has attempted to abuse) the fact that litigation in this District would be particularly burdensome for these Wisconsin Defendants, who have no connection to, or minimum contacts with, New York. Moreover, New York has no interest in adjudicating this dispute, which involved a Wisconsin company, and Plaintiff's desire to establish that company, gain equity in it – so that he could move to Madison, Wisconsin and work for it.

Finally, due process "requires a meaningful connection between the forum and defendant's "suit-related conduct." *Karoon v. Credit Suisse Grp. AG*, 2016 U.S. Dist. LEXIS 24480 *citing Walden v. Fiore*, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014)("[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); *see also 7 West 57th Street Realty Co., LLC,* 2015 U.S. Dist. LEXIS 44031, 2015 WL 1514539 at 10  ("[D]ue process requires more for the exercise of personal jurisdiction. The Foreign Banks' suit-related conduct must tie them to New York itself, not just to a plaintiff who happens to reside in New York"). Here, there is not a single thing that ties these Defendants or their suit-related conduct to New York – not a single thing.

## CONCLUSION

This case – to the extent that it belongs anywhere – belongs in Wisconsin. This matter is a business deal gone sour, between sophisticated parties, dealing in the start-up of a Wisconsin company, located in Wisconsin, doing no business in New York, and which Plaintiff intended as

a vehicle to move to Madison, Wisconsin. The mere fact that Plaintiff lives in New York is not relevant to either the New York long-arm analysis or the Constitutional due process analysis. To impose personal jurisdiction over Defendants in this case would set the bar so low, that it would be hard to imagine any dispute involving a New York plaintiff, where personal jurisdiction is not had over the foreign defendant. There are clear applicable standards for the imposition of personal jurisdiction, which have not been met in this case.

WHEREFORE, for the foregoing reasons, Defendants, CURT SZYMANSKI and CAFFEINATION TITLE, LLC, respectfully request an Order (a) dismissing the Complaint for lack of personal jurisdiction; and (b) awarding such other relief as may be deemed just and equitable under the circumstances.

Respectfully Submitted,

**Law Offices of Nolan Klein, P.A.**
*Attorneys for Defendants*
5550 Glades Road, Ste. 500
Boca Raton, FL 33431
PH: (954) 745-0588

By:  */s/ Nolan Klein*
NOLAN KLEIN, ESQ.
(NK4223)
klein@nklegal.com
amy@nklegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing instrument was e-filed with the Clerk of Court using CM/ECF, this **31st** day of **August,** 2020.

By:  */s/ Nolan Klein*
NOLAN KLEIN, ESQ.
(NK4223)

## SERVICE LIST:

**JOSHUA D. LEVIN-EPSTEIN, ESQ.**
Levin-Epstein & Associates, P.C.
420 Lexington Avenue, Suite 2525
New York, NY 10170
Ph: (212) 792-0046
joshua.levinepstein.com
*Attorney for Plaintiff*