# LEVIN-EPSTEIN & ASSOCIATES, P.C.

420 Lexington Ave. • Suite 2525 • New York, NY 10170
T: 212.792-0048 • E: Jason@levinepstein.com

October 28, 2020

***Via Electronic Filing***
The Honorable Judge Valerie E. Caproni
U.S. District Court Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *Solomon v. Szymanski et al*
      **Case No.: 20-cv-05449-VEC**

Dear Honorable Judge Caproni:

This law firm represents Plaintiff Allen Solomon (the "**Plaintiff**", or "**Solomon**") in the above-referenced action.

This letter is submitted pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015) ("Cheeks"), seeking approval of the enclosed Settlement Agreement, which provides for a total settlement amount of $40,000.00 (the "**Settlement Amount**"). By notice filed on September 25, 2020, the Southern District of New York Mediation Office advised the Court that the parties had reached a settlement of the action. [Dckt. No. 22].

A copy of the executed Settlement Agreement, is attached hereto as "**Exhibit A**."

A copy of the undersigned's law firm's contemporaneous billing record is attached hereto as "**Exhibit B**."

A copy of the law firm's engagement agreement is attached here to as "**Exhibit C**."

A Stipulation of Dismissal is being filed simultaneously with this letter motion, and the parties respectfully request that the court So-Order the Stipulation.

As a preliminary matter, the release contained is the Settlement Agreement contains a general mutual release that is generally broader than the typical limited release in settlement agreements that resolve FLSA and NYLL wage-and-hour claims.  But this is not a typical FLSA and NYLL wage-and-hour case, as set forth more fully below.

In the instant case, the Plaintiff is a law school educated, successful businessperson, that desires the obtainment of the mutual general release to fully resolve all the claims between the parties and accomplish a walk-away, once and for all.  As set forth more fully below, the factual predicate of the instant case is atypical for an FLSA and NYLL wage-and-hour case because Plaintiff's performance of work for Defendants directly, and indirectly through his company, The Rebel Unicorn LLC, gave rise to certain claims that sound in *quantum meruit* and other claims under the FLSA and NYLL. Plaintiff's claims in the instant action may be characterized as a blend of claims for work that Plaintiff performed as an employee of Defendants' start-up company,

1

Caffeination Title, LLC ("**Caffeination**") and claims for work that Plaintiff performed, through his company, The Rebel Unicorn LLC, for Caffeination. In their Motion to Dismiss [Dckt. Nos. 16-18, 21], Defendants have intimidated the assertion of counterclaims against Plaintiff arising out of the parties' business relationship. As such, the general release is an important part of the consideration that Plaintiff is obtaining in the Settlement Agreement.

None of the public policy considerations that generally support the rejection of broad general releases in settlements agreements that resolve FLSA and NYLL wage-and-hour claims are present here. Here, the parties have equal bargaining power, the general release is mutual, and the general release is an important part of the consideration that the Plaintiff is obtaining.

Courts in this District have approved a general release when (1) it is mutual; and (2) the employer and employee have ceased their employment relationship. *Strauss v. Little Fish Corp*., 2020 WL 4041511, at *5 (S.D.N.Y. 2020); *Souza v. 65 St. Marks Bistro,* 2015 WL 7271747, at *5 (S.D.N.Y. 2015); *see also* § II, *infra*. This is the case here.

## I.    Procedural History

On July 15, 2020, Plaintiff filed a complaint against Defendants Caffeination and Curt Szymanski ("**Szymanski**", and together with Caffeination, the "**Defendants**"), asserting claims of minimum wage and overtime wage violations, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("**FLSA**") and the New York Labor Law, N.Y. Lab. Law § 650 *et seq*. ("**NYLL**"), the Wage Theft Prevention Act ("**WTPA**"),  the New York City Administrative Code ("**NYC Charter**"), as well as claims for *quantum meruit* and unjust enrichment. [*See* Dckt. No. 3] [Complaint (the "**Compl**.")].

From January 3, 2020 through and including June 23, 2020, Solomon provided substantial work for Defendants. [*Id.* at ¶¶ 30, 32]. Solomon provided extensive work that included, *inter alia*, the following:

a.    Advising on title insurance best practices;
b.    Advising on title insurance process and optimization of same;
c.    Advising on title insurance regulatory compliance;
d.    Title agency licensing strategy and execution of licensing in ten (10) states;
e.    Advising on title insurance hiring and recruiting;
f.    Advising on title insurance technology roll out;
g.    Creation of a business plan;
h.    Introduction to major title insurance underwriters;
i.    Acquisition of a national agency agreement with Old Republic Title;
j.    Advising on claims handling;
k.    Creation of a marketing plan;
l.    Design of marketing collateral;
m.    Introduction to world class vendors in the title industry;
n.    Assembly of a world class title industry team; and

o.      Creation of fee sheets competitive in the Midwest region.

*Id*. at ¶ 9.  Solomon never received a single payment or remuneration of any kind.

## II.      Background of the Parties Relationship and the Instant Dispute

Solomon is the author of the Title Insurance Licensing Manual as well as The Ultimate Real Estate Transaction Compliance Bible. He is a sought-after speaker and expert on topics including insurance, process improvement, social media, email marketing, marketing automation, SEO, web design, lead generation, software development and sales process development.  He has a Juris Doctorate from the Tulane University.  Syzmanski was interested in Solomon's expertise.

In early December 2019, Syzmanski traveled to New York City for a two-day consultation/mentoring session with Solomon to discuss Syzmanski's desire to start a national title agency. The meeting occurred whereupon Solomon consulted with Syzmanski on the various general items needed to start such an enterprise. Following the meeting, Solomon received a call from Syzmanski who solicited Solomon to work for the start-up company.

On that call, the parties discussed Solomon's remuneration as follows: (i) a total of 10% capital interest over a three (3) year period; (ii) an upfront 3.33% capital interest, a second 3.33% capital interest one-year following the date of the initial grant; and the final 3.33% grant upon one-year following the date of the second grant, for a total of 10% over three (3) years; and (iii) the parties agreed to discuss additional equity incentive milestones. Syzmanski agreed to memorialize the terms referenced above in a contract. Based on the above terms, Solomon commenced work for Syzmanski in January 2020. During the COVID-19 lock down, Solomon and Syzmanski further discussed Solomon moving to Madison, Wisconsin to work for Caffeination. In that conversation, Solomon and Syzmanski agreed Solomon was going to receive a $150,000 salary, which is 50% of the market rate for a thought leader in this field, because Caffeination was a start-up company.

Solomon had concerns that Syzmanski had still not sent over any of the contracts. Over the course of the next few months, Syzmanski repeatedly said "the contracts are coming." This was stated no less than 5-7 times to Solomon. After Solomon let it be known that it was "time" to see contracts, Syzmanski sent contracts, entitled "Capital Interest Unit Grant Agreement" and the Caffeination Title, LLC Consulting Agreement, in June, with an apology that the contracts took so long. The contracts that Syzmanki provided materially differed from the terms set forth above.

Since Solomon had not received any type of payment, he filed the instant lawsuit.[1]

## A.   Defendants' Motion to Dismiss Intimates Counter Claims Against Solomon

Prior to the Court-ordered mediation, Defendants filed a motion to dismiss the Complaint

---

[1] Defendants dispute almost all of these alleged facts.

on the basis that this Court lacks personal jurisdiction over Defendants Caffeination (a Wisconsin limited liability company) and Szymanski (a Wisconsin resident). [*See* Dckt. Nos. 16-18, 21] (the "**Motion to Dismiss**").

Defendants' Motion to Dismiss threatened claims against Plaintiff. [*See* Dckt. No. 18 at ¶¶ 13, 14; Dckt. No. 21 at pp. 7, 8].  The preemptive settlement of such claims has real value and constitutes consideration for the Plaintiff.

### B.  A Settlement Was Reached at the September 22, 2020 Mediation

On August 12, 2020, the Court referred the parties to mediation. [*See* Dckt. No. 15]. A mediation session was held on September 22, 2020 before Mediator S. Reid Kahn, of Kane Kessler, P.C. Plaintiff and Defendants participated at the mediation with their respective counsel. At the September 22, 2020 mediation, the parties, after several hours of negotiation, reached an agreement, the material terms of which were memorialized in an email sent from Mediator Kahn to the parties on September 22, 2020. [*See e.g.,* Dckt. Nos. 22, 23].  That email specifically referenced not only the settlement amount, but another material consideration for settlement, *i.e.*, the global, mutual release.

The parties reached a resolution in principal to settle this matter for a total sum of $40,000.00 to be paid out in two installments **and the parties agreed on mutual global releases**. Each of these components were material terms of the consideration for the settlement, as acknowledged in Mediator Kahn's email memorializing the material terms of the settlement.[2]

As set forth more fully below, the settlement is fair, reasonable, the product of arm's length negotiations between counsel, and made before an experienced mediator. For these reasons and those set forth in further detail below, the Settlement Agreement should be approved.

### III.    The Proposed Mutual General Release is Fair and Reasonable

The Settlement Agreement includes a general mutual release that is fair and reasonable. Although "[c]ourts typically reject…broad releases" in settlement agreements resolving FLSA and NYLL claims, the general mutual release proposed in the Settlement Agreement is fair and reasonable because: (i) it is mutual; (ii) the employer and employee have ceased their employment relationship; (iii) the release is a critical component of the bargained for consideration; and (iv) the Plaintiff holds a Juris Doctorate, is an experienced business person, nationally recognized expert on title insurance, and, by virtue of his background, fully understands the implications of the mutual general release. *See Souza,* 2015 WL 7271747 at *5 (approving general, mutual release where former employees have no ongoing relationship with the employer).

As the Honorable Judge Cott explained when reviewing a case like the one at issue:

---

[2] Defendants position was that this is not a true FLSA case and should not have been filed as such, and that this is a business dispute, which they are only settling to avoid further expense and litigation, and in exchange for a general release of all claims.

4

"A general release…with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure…Accordingly, the Court is willing to approve the release terms of the settlement in this case, with the modification that the release be mutual in all respects. A mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes. It is just as necessary for employees to obtain a release from the employer in these circumstances, otherwise they could still face the threat of litigation. This result is consistent with the goals of a fair and just settlement."

*Id*. Other Courts in this District have similarly addressed a mutual general release and concluded:

"There is nothing inherently unfair about a release of claims in an FLSA settlement. Applying the *Wolinksy* factors to this case, the Court concludes that the mutual release of claims in the Settlement are fair and reasonable, and do not run afoul of the non-FLSA claims, was the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel. Weighing the litigation risk involved in taking this case to trial against the full payment of unpaid overtime and partial liquidated damages provided by the Settlement, Plaintiffs could reasonably conclude that the provisions releasing claims were an acceptable compromise."

*Straus.,* 2020 WL 4041511 at *5; *see also Daniels v. Haddad*, 2018 WL 6713804, at *1 (S.D.N.Y. 2018) (upholding general release provisions because "the parties have provided 'a concrete and persuasive explanation of the practical benefit [Plaintiff] stands to realize in exchange for broadly releasing all claims against [Defendants]'") (quoting *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229 (S.D.N.Y. 2016)); *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171, at *3 (S.D.N.Y. 2017) (approving general release in part "because the provision was negotiated by competent counsel for both sides, the mutual release is permissible in this case"); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. 2016) (noting also that the mutuality of the release "assuag[ed] concerns that the waiver benefits only Defendants").

In addition to mutuality and the absence of a continuing employment relationship, party size is also a salient consideration. This case is not a class action and so one of the dangers of an overly broad release—that it would bind class members who had no power to negotiate the settlement—is absent here. *Weng v. TW Rest. Inc.*, 2016 WL 3566849 at *5 (S.D.N.Y. 2016) (accepting a mutual general release because the agreement bound only nine plaintiffs and was not a class action).

Accordingly, the instant case represents an exception to the general rule that generally prohibits a global, broad release for the Defendants.

5

IV.     **The Settlement Agreement is Fair and Reasonable**

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp*., 2013 WL 4427917, at *2 (S.D.N.Y. 2013) (citation omitted). This is the case here.

1.   **The Settlement Sum is Substantial and Fair Given the Plaintiff's Range of Recovery**

The first factor articulated in *Wolinsky* examines "the Plaintiff's range of possible recovery." *Wolinsky,* 900 F.Supp.2d 332, at 335.

The Settlement Agreement satisfies this prong because Plaintiff's proposed ultimate recovery represents approximately more than 50% of Plaintiff's estimated maximum recovery. *See Chowdhury v. Brioni America, Inc*., 2017 WL 5953171 at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp*., 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery).

The method and formula for the derivation of the Plaintiff's reasonable range of recovery assumes the following:

- Plaintiff's work for the Defendants would have been split into two categories: (i) Plaintiff's work performed for Caffeination that Plaintiff performed in his individual capacity and (ii) Plaintiff's work performed, through his company, The Rebel Unicorn LLC. To the extent that Defendants would argue that The Rebel Unicorn LLC – a non-party to this action – should assert at least some of the claims for unpaid work in this case, the calculation for the estimated range of recovery assumes that the total amount of the work is split, *i.e.*, the total amount of hours worked in the amount of 621.30 is split equally. This, then, results in Plaintiff's

work performed, in his individual capacity, in the total amount of 310.65 hours, at the rate of $250, which yields a total under payment of **$77,662.50**.

The Settlement Agreement requires that Defendants pay Plaintiff the aggregate settlement sum in the amount of $40,000 to resolve the case in two installments. Each payment of the Settlement Amount shall be allocated between Plaintiff and the undersigned law firm as follows: Plaintiff is reimbursed $500 for costs incurred out of a total amount of disbursements in the amount of $650.00 (comprising of a $400 filing fee, and a $250 service of process fee), the remainder of costs in the amount of $150 is deducted from the gross settlement amount, the undersigned law firm shall receive 1/3 of every payment received, and Plaintiff shall receive 2/3 of every payment received, *to wit*:

| Payment No. | Costs | Attorneys' Fees | Plaintiff's Recovery |
|---|---|---|---|
| Payment 1 ($30,000) | $500 to Plaintiff $150 to Levin-Epstein | $ 9,783.33 | $ 19,566.67 |
| Payment 2 ($10,000) | $0 | $3,333.33 | $6,666.67 |

After attorneys' fees and expenses, Plaintiff will receive payments totaling **$26,233.34**.

Plaintiff believes that the Settlement Amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of additional discovery.

Through the course of the mediation process and the discovery process, the key issue that evolved concerned whether or not Plaintiff would be entitled to liquidated damages in the event that he was not considered a covered employee under the FLSA and the NYLL. Plaintiff also faced the risk of counter claims.

The net proceeds of the Settlement Agreement at the very least compensate Plaintiff for approximately 50% of Plaintiff's estimated maximum recovery for 310.65 hours of work at Plaintiff's rate of $250.

Given the risks these issues present, the Settlement Amount is reasonable and fair.

The Court should also respectfully take into consideration that Solomon is a sophisticated party that is desirous of this Court's approval of the Settlement Agreement.

## 2. The Settlement Agreement Avoids the Incurrence of Additional Expenses

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor also weighs in favor of *Cheeks* approval.

The Settlement Agreement resolves *bona fide* disputes over sharply contested issues, namely whether Plaintiff was an employee within the meaning of the FLSA and NYLL; and

whether Plaintiff has personal jurisdiction over Defendants. [*See* Dckt. Nos. 16-18, 21]. The Settlement Agreement also accomplishes a walk away, once and for all.

If the trier of fact determined that Plaintiff was not a covered employee, or if the Court determined that Plaintiff lacked personal jurisdiction over Defendants, then Plaintiff's recovery would be greatly diminished.  Proceeding to trial would consume significant amounts of time and resources, especially given that Plaintiff faced the risk of counter claims.

The continued litigation of this case would necessitate no less than three (3) depositions, and a trial. The associated costs the continued prosecution of this case would necessitate the incurrence of substantial attorneys' fees and costs on both sides. Accordingly, it is in the interests of both parties to effectuate a settlement.

### 3.  The Seriousness of the Litigation Risk Faced by both Parties is High

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id at 335.* This factor also weighs heavily in favor of settlement.

Both parties face serious litigation risks as to both liability and damages.

Given that Defendants did not maintain accurate contemporaneous payroll or time records relating to Plaintiff's employment, Plaintiff likely would have presented sufficient evidence to show the amounted of uncompensated work alleged in the Complaint as a matter of just and reasonable inference. *See D'Arpa,* 2013 U.S. Dist. LEXIS 85697, at *51 (citing 29 U.S.C. § 211(c)). "'[A]t summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present sufficient evidence to show the amount of [the uncompensated work] as a matter of just and reasonable inference.'" *Id.* (*quoting Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 [2d Cir. 2011]).

Plaintiff also faced serious risk as to liability. As discussed in § II(A), *supra*, prior to the Court-ordered mediation, Defendants filed a Motion to Dismiss the Complaint on the basis that Plaintiff (a New York resident) lacks personal jurisdiction over Defendants Caffeination (a Wisconsin limited liability company) and Szymanski (a Wisconsin resident). [*See* Dckt. Nos. 16-18, 21].

As argued in Defendant's Motion to Dismiss, Defendants are not subject to the Court's personal jurisdiction because Defendants provide no services in New York, and do not have the requisite "minimum contacts" within New York. [*See* Dckt. No. 17 at pp. 13, 15].  Regardless, the costs associated with the litigation of this issue favors settlement.

Plaintiff also faced the prospect of counterclaims. [*See* Dckt. Nos. 16-18, 21]

Accordingly, the seriousness of the litigation risks on the part of both parties' continued prosecution of the case weighs in favor of settlement.

**4.   The Settlement Agreement is a Fair Compromise Accomplished Between Experienced Counsel Following Court-Ordered Mediation**

The fourth *Wolinsky* factors examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel" as well as the "possibility of fraud or collusion." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor weighs heavily in favor of *Cheeks* approval.

The contested issues, and arms-length negotiation by counsel, demonstrate there was no fraud or collusion. especially given that an experienced mediator presided over the settlement negotiation. *See Meigel v. Flowers of the World, NYC, Inc*., 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ([T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement). *Abrar v. 7-Eleven, Inc*., 2016 WL 1465360, at *2 (E.D.N.Y. 2016). Additionally, Plaintiff is satisfied with the settlement amount and voluntarily and willingly entered into the agreement.

The undersigned law firm has successfully defended dozens of corporations and businesses owners in FLSA actions in the Eastern and Southern Districts of New York. *See, e.g., Shimunov v. A & Y Cafe Inc.* [17-cv-04714] (E.D.N.Y 2018); *Rivera v. The Ave Lunch Box, Inc. et al* [17-cv-07154] (E.D.N.Y 2018); *Espinal, et al v. Bi-County Auto and Truck Salvage, Corp., et al* [17-cv-04700] (E.D.N.Y 2018); *Rivera v. The Crabby Shack, LLC* [17-cv-04738] (E.D.N.Y 2018); *Peralta v. JD Beverage Corp. et al.* [18-cv-00118] (E.D.N.Y 2018); *Wee Kwang Oh v. Jema Inc., et al.*; [17-cv-02964] (E.D.N.Y 2018); *Fabre v. S.N.A. Concrete Pumping Corp. et al* [17-cv-05303] (E.D.N.Y 2018); *Simon v. Zarman Surgical Supply, Inc. et al* [17-cv-05112] (E.D.N.Y 2018); *Garcia Hernandez et al v. D&D Alba ConstructionRen Corp. et al* [18-cv-05787] (S.D.N.Y 2018); *Smith v. Digital Social Retail, Inc., et al* [18-cv-06602] (S.D.N.Y 2018); *Mondragon v. El Puerto De Acapulco Bar Restaurant Inc. et al* [17-cv-05613] (E.D.N.Y 2019); *Suarez v. McQuilling LP, et al* [ 17-cv-611] (S.D.N.Y 2018); *Hugo Ortega Hernandez et al v. Muzzarella Inc. et al* [17-cv-06164] (S.D.N.Y 2018); *Clarke v. Pure Green NYC 8th Street Corp, et al* [18-cv-00532] (S.D.N.Y 2018).

**V.   The Allocation for Attorneys' Fees and Costs is Reasonable**

As Plaintiff's counsel, the undersigned agreed to be paid a 1/3 contingency fee, agreed to by Plaintiff in his Retainer Agreement, which is reduced to writing and is signed by him. *See* Ex. C.

Disbursements we have paid are limited to the court filing fee ($400) and service of process ($250) for a total amount of $650. The Plaintiff paid the amount of $500 toward these fees. The undersigned deducted the total amount of $650 from the Settlement Amount, and divided the difference by three, with one-third for legal fees and two-thirds to Plaintiff. Proof of disbursements are included in "**Exhibit D**".

Since the filing of the case, Plaintiff's  counsel expended considerable time and effort in the prosecution of this case, including the attendance at a mediation held on September 22, 2020; multiple conferences with Plaintiff, the drafting of a *ex parte* mediation statement; **the analysis**

**and review of thousands of emails between the parties**; and multiple telephonic conferences with Defendants' attorney.  *See* Ex. C. Plaintiff's counsel drafted a ten-page, single-spaced mediation statement, with exhibits, that facilitated an early resolution of the instant case.

A brief biography of each attorney who performed billed work in this matter is as follows:

Joshua D. Levin-Epstein, Esq. is billed at the rate of $450 per hour, which is his standard billing rate for wage-and-hour matters paid on an hourly basis. He is the founder and managing member of Levin-Epstein & Associates, P.C., and has been in practice since 2006.

Prior to founding the firm, Mr. Levin-Epstein was part of the Business Solutions, Governance, Restructuring & Bankruptcy practices at international and national law firms where he represented constituents in complex litigation and transactional matters. He also served as Law Clerk to the Honorable Alan H.W. Shiff in the United States Bankruptcy Court for the District of Connecticut (Bridgeport Division). Mr. Levin-Epstein received a B.S. in Foreign Service from the Edmund A. Walsh School of Foreign Service at Georgetown University. At Georgetown University, Mr. Levin-Epstein received several merit-based scholarship awards. Mr. Levin-Epstein received his J.D. from The University of Michigan Law School.

Mr. Levin-Epstein previously chaired the Labor and Employment Subcommittee for the New York City Bar Association's Hospitality Law Committee.  He authored a White Paper on the history of the development of local Community Boards in New York City.

Jason Mizrahi, Esq. is an associate at Levin-Epstein & Associates, P.C., and is billed at the rate of $325 per hour. At the time Plaintiff's engagement agreement was signed, this was his standard rate for wage and hour matters on which he is paid at an hourly rate. Mr. Mizrahi earned his B.A. from the University of Maryland, and his J.D. from Brooklyn Law School in 2016. Following law school, he practiced as an associate at a boutique law firm concentrating in labor and employment law. He was previously In-House Counsel and Human Resources Manager for a wholesale baking company headquartered in the Bronx, with global operations in China, South Korea and the United States.

The firm has obtained favorable decisions in wage-and-hour cases that have set precedent in this area of law. *See Rivera v. The Crabby Shack, LLC* [17-cv-04738] (E.D.N.Y 2019) at Dckt. No. 49 [successfully arguing motion to enforce and approve settlement agreement on behalf of defendants]*; Reyes et al v. The Picnic Basket, Inc. et al.* [18-cv-00140] (S.D.N.Y 2018) (successfully opposing Plaintiff's motion for conditional certification); *Pugh v. Meric* [18-cv-3556] (S.D.N.Y 2019) (successful bench trial) at Dckt. No. 107 (Decision and Order of the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages), and Dckt. No. 118 (Decision and Order of the Hon. Senior Judge Denise Cote, reducing attorneys' fees award of $8,000 to $800).

The firm's representative FLSA experience includes the following cases in the Southern and Eastern Districts of New York:

| | |
|---|---|
| *Ramos v. 175th Street Laundromat, Inc. et al* | 19-cv-9545 |
| *Shimunov v. A & Y Cafe Inc* | 17-cv-04714 |

| | |
|---|---|
| *Roman et al v. ABC Corp. et al* | 19-cv-6628 |
| *Oswaldo et al v. Kim et al* | 18-cv-3140 |
| *Fafara v. Arenas, Parks & Stadium Solutions, Inc. et al* | 18-cv-09294 |
| *Rivera v. The Ave Lunch Box, Inc. et al* | 17-cv-07154 |
| *Elizabeth Gonzalez et al v. Banaco II LLC et al* | 19-cv-05602 |
| *Pugh v. Bestall Moda, LLC* | 27036/2017E |
| *Espinal, et al v. Bi-County Auto and Truck Salvage, Corp., et al* | 17-cv-04700 |
| *Marcos v. Café Riviera Inc. et al* | 19-cv-03981 |
| *Espinosa v. Carefree Painting Associates, Inc. et al* | 19-cv-01150 |
| *Rivera v. The Crabby Shack, LLC* | 17-cv-04738 |
| *Garcia Hernandez et al v. D&D Alba ConstructionRen Corp. et al* | 18-cv-05787 |
| *Espinobarros Basurto et al v. Diala Deli Gourmet Corp. et al* | 19-cv-09792 |
| *Smith v. Digital Social Retail, Inc., et al* | 18-cv-06602 |
| *Pineda et al v. Dique Pic Productions LLC et al* | 19-cv-03168 |
| *Basurto et al v. Eda Food Inc. et al* | 18-cv-8858 |
| *Mondragon v. El Puerto De Acapulco Bar Restaurant Inc. et al* | 17-cv-05613 |
| *Lucero v. Gallitos Mexican Urban Kitchen Inc* | 18-cv-01542 |
| *Franco v. Galvis & Musa, Corp. et al* | 19-cv-3828 |
| *Seo v. I.P.T Name and Design Inc. (d.b.a Tyche NYC) et al* | 19-cv-2202 |
| *Peralta v. JD Beverage Corp. et al.* | 18-cv-00118 |
| *Wee Kwang Oh v. Jema Inc., et al.* | 17-cv-02964 |
| *Flores-Colin v. La Oaxaquena Restaurant Corp. et al* | 18-cv-02966 |
| *Reyes v. Labra Telecom, Inc. et al* | 19-cv-09955 |
| *Singh v. Lintech Electric, Inc. et al* | 18-cv-05780 |
| *Evans v. Manhattan Carpets Inc. et al* | 19-cv-10298 |
| *Suarez v. McQuilling LP, et al* | 17-cv-6113 |
| *Pugh v. Meric* | 18-cv-03556 |
| *Hugo Ortega Hernandez et al v. Muzzarella Inc. et al* | 17-cv-06164 |
| *Carlos Alvarado et al v. New Rams Deli Plus Inc. et al* | 18-cv-08650 |
| *Rodriguez v. New York Fast General Contracting Corp, et al* | 18-cv-04072 |
| *Carter v. Nite Corporation* | 19-cv-4511 |
| *Alvarado, et al. v. Organic Food Nautral Juices & Coffee Shop, Corp., et al* | 18-cv-03952 |

| | |
|---|---|
| *Chincha v. Patel* | 17-cv-06127 |
| *Reyes et al v. The Picnic Basket, Inc. et al.* | 18-cv-00140 |
| *Ortiz Ochoa et al v. Prince Deli Grocery Corp. et al* | 18-cv-09417 |
| *Clarke v. Pure Green NYC 8th Street Corp, et al* | 18-cv-00532 |
| *Coronel v. Royal Katsuei Inc* | 19-cv-3054 |
| *Buestan v. Ryszard Food Distributor, Inc. et al* | 19-cv-04273 |
| *Fabre v. S.N.A. Concrete Pumping Corp. et al* | 17-cv-05303 |
| *Obispo Guinea v. Sagal Meat Market VII Inc. et al* | 19-cv-03448 |
| *Pacheco v. Sammy Dry Cleaners, Inc. et al* | 17-cv-7931 |
| *Cervantes Isidoro et al v. Siam SMP Inter, Inc. et al* | 19-cv-04054 |
| *Acharya v. 7-Eleven, Inc., et al* | 18-cv-08010 |
| *Hernandez Alejandro v. Steven Stile Farmers Mkt No 2 LLC et al* | 19-cv-09504 |
| *Strulowitz v. Flavor Boutique 796 Inc. et al* | 18-cv-08382 |
| *Reyes et al v. Tava Cafe LLC et al* | 18-cv-10210 |
| *Ullo v. RFR Holding L.L.C. et al* | 18-cv-11281 |
| *Anselmo Lopez et al v. Uno Express Cleaners Inc. et al* | 18-cv-10737 |
| *Rojas et al v. Velkonel Restaurant, Inc. et al* | 17-cv-6616 |
| *Simon v. Zarman Surgical Supply, Inc. et al* | 17-cv-05112 |
| *Bellas v. Abraham and Abraham Attorneys and Counselors at Law, LLC et al* | 19-cv-04901 |

The contingency fee in this case should be approved because it is the fee Plaintiff agreed upon in his retainer agreement, in his dominant language. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written.").

Moreover, the one-third contingency is the fee which courts in this District consider to be presumptively fair in FLSA cases. *See, e.g., Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427, at *5 (S.D.N.Y. 2016); *Garcia v. Atlantico Bakery Corp.*, 2016 WL 3636659, at *1 (S.D.N.Y. 2016) ("one-third of the total award is the customary contingency percentage in FLSA cases"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. 2016) (holding fee award of one-third of settlement "consistent with 'contingency fees that are commonly accepted in the Second Circuit in FLSA cases."); *Caprile v. Harabel Inc.*, 2015 WL 5581568, at *2 (S.D.N.Y. 2015); *Meza v. 317 Amsterdam Corp.*, 2015 WL 9161791, at *2 (S.D.N.Y. 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); *Torres v. Gristede's Operating Corp.*, 519 Fed.Appx. 1, 5 (2d Cir. 2013) (characterizing one-third as "standard contingency-fee level[ ]" in FLSA case); *Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. 2012) (awarding plaintiffs' counsel one-third of the net settlement amount); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *9 (S.D.N.Y. 2010) (collecting cases awarding plaintiffs' counsel 33% of settlement fund in FLSA actions).

Based on this, the requested fee of one-third of plaintiff's recovery should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

**VI.      The Settlement Agreement Satisfies All Other Factors Considered for Approval**

The remaining non-economic terms of the Settlement Agreement are consistent with *Cheeks*. For example, there are no confidentiality provisions. The settlement was reached following arm's-length negotiations between counsel well-versed in wage-and-hour law after the parties exhausted negotiations at a mediation before an experienced alternative dispute resolution practitioner and following extensive review of over 1,000 emails and documents.

In sum, the settlement is fair and reasonable, providing Plaintiff with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

LEVIN-EPSTEIN & ASSOCIATES, P.C.

By:   */s/ Jason Mizrahi*
     Jason Mizrahi, Esq.
     420 Lexington Ave., Suite 2525
     New York, NY 10170
     Tel. No.:  (212) 792-0048
     Email: Jason@levinepstein.com
     *Attorneys for Plaintiff*

13